In the Matter of the Claim of PATRICK BROGAN, Respondent, v FORD MOTOR COMPANY, Appellant. WORKERS' COMPENSATION BOARD, Respondent.

Third Department, December 22, 1983

APPEARANCES OF COUNSEL

*Phillips, Lytle, Hitchcock, Blaine & Huber* (*Ronald E. Weiss* and *Marvin H. Mason* of counsel), for appellant.

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Frank S. Kedzielawa* and *Gerard R. Fornes* of counsel), for Patrick Brogan, respondent.

*Robert Abrams, Attorney-General* (*Howard B. Friedland, Reed Brody* and *Carlin Meyer* of counsel), for Workers' Compensation Board, respondent.

*Colleran, O'Hara, Kennedy & Mills, P. C.*, for New York State AFL-CIO, *amicus curiae.*

*Adams & Justice, P. C.* (*Lawrence P. Justice* and *D. Alan Wrigley, Jr.*, of counsel), for Business Council of New York State, Inc., *amicus curiae.*

OPINION OF THE COURT

SWEENEY, J.

In December of 1980, claimant, an employee of Ford Motor Company, filed a claim for occupational loss of hearing due to a 30-year period of exposure to noise at injurious levels. The board awarded him benefits based on a 23% binaural hearing loss. Shortly thereafter, by a supplemental decision, the board reaffirmed this decision. By its initial decision the board held that the regulations on which the award was based were adopted in compliance with the statutory authority and this determination was reaffirmed in the supplemental decision. Ford has appealed from both of these determinations.

This case takes on unusual significance since it is the first to be considered by this court after a meaningful change in the regulations pertaining to standards for determining when a worker has suffered an occupational loss of hearing, resulting in a real probability of increased

economic impact on employers. The new regulations (12 NYCRR part 351) took effect on October 1, 1980. It specified that the "low fence" for measuring an occupational loss of hearing would be 25 decibels. The "low fence" is the point at which no significant hearing handicap exists. The new rules changed the frequencies to be used in testing occupational loss of hearing from between 500 and 2,000 hertz (Hz) to between 1,000 and 3,000 Hz. These changes had a decided impact on the instant case since claimant's examining physician who gave claimant a 23% loss of hearing under the new regulations also found that claimant would have had no compensable hearing loss under the old formula.

Ford challenges both the regulations and the procedures followed in adopting them. It contends that the board erred in failing to hold a hearing prior to adopting the regulations in violation of the Labor Law and in failing to make allowance for presbycusis, hearing loss due to aging, in factoring its formula. It also contends that the special committee appointed pursuant to section 49-gg of the Workers' Compensation Law had a greater number of members than allowed by the statute and that a majority of the committee did not support the regulations. Finally, it contends that the procedure followed in adopting the regulations was unconstitutional.

■ We will first consider Ford's contention that a hearing was required pursuant to section 29 of the Labor Law prior to adopting the new regulations. Section 29 requires the holding of a public hearing "[b]efore any rule is adopted, amended or repealed". Ford relies on section 127 of the Workers' Compensation Law which provides that "[t]his chapter shall be read and construed in connection with the labor law". Ford's reliance on these sections is misplaced. While section 127 of the Workers' Compensation Law provides that the Labor Law shall be applicable to the Workers' Compensation Law, it does so as a principle of general construction. Section 49-gg of the Workers' Compensation Law, however, outlines the procedural steps the board must take in adopting regulations and it makes no mention of a hearing prior thereto. Under the circumstances, the Labor Law is superseded by the specific language of section 49-gg of the Workers' Compensation Law

(see *Matter of Board of Educ. v State Div. of Human Rights,* 38 AD2d 245, affd 33 NY2d 946) and since the language of the statute does not provide for a hearing, it is reasonable to assume that the Legislature did not intend one.

■ We also reject Ford's contention that the board abused its discretion in failing to provide a deduction for presbycusis. The board found, based on various opinions of experts, that "[h]earing loss from repeated exposure to excessively loud noise usually occurs in the 4,000 Hz area" and that there was no need to allow a presbycusis deduction if frequencies below the 4,000 Hz level were adopted. Since there is a rational basis for this determination, we should not disturb it. Further, contrary to Ford's contention, section 49-gg does not mandate that a deduction for presbycusis be factored into the board's formula. A fair reading of the statute demonstrates that it merely recommends possible topics the special committee must consider while debating proposed regulations and grants broad and flexible authority to the board (see *Matter of Gormeley v New York Daily News,* 30 AD2d 16, 22, affd 24 NY2d 867).

■ We cannot agree with Ford that the special committee which drafted the regulations was enlarged beyond the statutory limit. While the record indicates that additional experts were consulted, it appears that by these actions the committee was merely following an explicit statutory direction to "meet and confer with representatives of the workers' compensation board and with representatives of employers and employees" (Workers' Compensation Law, § 49-gg). The filed regulatory impact statement named only six members of the committee, a number well within the statutory limit. The record also reveals, contrary to Ford's assertions, that the regulations were supported by a majority of the committee.

■ Passing to the constitutional issue raised by Ford, we note that it does not question the authority of the Legislature to delegate the rule-making power to the board or that the delegation is insufficiently outlined. While the constitutional objections raised are general and somewhat vague, in substance Ford appears to contend that the board violated the New York State Constitution by exceeding its delegated authority conferred by section 49-gg and in

adopting regulations contrary to the prevailing medical authority. We disagree. From an examination of the record, the board stayed within its delegated authority in adopting the regulations and there is a reasonable relationship between the regulations and the intended purpose of the legislation. We have examined all other arguments advanced by Ford and find them unpersuasive. The decisions should be affirmed.

MAHONEY, P. J., KANE, MIKOLL and LEVINE, JJ., concur.

Decisions affirmed, without costs.